UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CEDRICK LEDALE TAYLOR,

        Petitioner,

v.

RANDEE REWERTS,

        Respondent.

_____/

Case No. 1:18-cv-962

Honorable Paul L. Maloney

# **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

I.     Factual Allegations

Petitioner Cedrick Ledale Taylor is incarcerated with the Michigan Department of Corrections at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Following a jury trial in the Eaton County Circuit Court, Petitioner was convicted of third-offense domestic violence, Mich. Comp. Laws § 750.814, bribing, intimidating, or interfering with a witness, Mich. Comp. Laws § 750.122(7)(a), and unlawfully driving away an automobile, Mich. Comp. Laws § 750.413. On September 17, 2015, the court sentenced Petitioner as a fourth-offense felony offender, Mich. Comp. Laws § 769.12, to respective prison terms of 6 to 30 years, 4 to 15 years, and 1 year, 6 months to 20 years.

The following facts are taken from the opinion of the Michigan Court of Appeals:

> The complainant testified that she was living with Taylor in November 2014. They had an argument on November 16, 2014, and she asked Taylor to leave her home. Taylor refused. During a further argument, Taylor shoved her down, grabbed her, attempted to strike her, and threatened to kill her if he found another person in her house when he returned. Taylor took her keys and left in a truck that belonged to the complainant's mother. The complainant eventually called the police. Grand Ledge Police Officer Mark Sleep testified that he took pictures of the complainant's injuries and eventually found and arrested Taylor. The complainant also testified that Taylor engaged in a series of contacts to persuade her not to testify, including sending messages through a friend and sending a letter to her teenage son.
>
> Taylor testified that though he had a good relationship with the complainant, they argued after the complainant found pictures of his former partner on his phone. Taylor testified that the complainant threw the truck keys at him and told him to leave for an appointment. Taylor did not immediately leave because the complainant was upset and crying, but he left after the complainant assured him that she loved him. When he returned to the house, the door was locked, and he was arrested at a gas station on his way to return the truck to the complainant's mother.
>
> The prosecution admitted testimony of an alleged victim of a previous domestic violence incident in a case that was pending before the Ingham Circuit Court. The prosecuting attorney indicated that she had spoken with the victim on the Friday before trial, and the victim assured her that she would be in court to

testify. However, on the morning of trial, the victim called and stated that she would be unable to testify. The prosecuting attorney sent the prosecution's investigator to the victim's home and another home to attempt to find her, and asked the victim's parents where she was, but was unable to locate her. The prosecuting attorney argued that these were reasonable efforts to secure the witness, and the trial court ultimately agreed.

Accordingly, the victim's preliminary examination testimony was read into the record. This testimony included that in August 2012, Taylor punched her in the face and gut during an argument, and in September 2012, he began punching her in the face in a moving vehicle. The victim injured her arm when she jumped from the vehicle. The jury found Taylor guilty as previously stated. Taylor now appeals, contending that the trial court erroneously violated his right to confront the witnesses against him by admitting the alleged previous victim's testimony.

*People v. Taylor*, No. 329789, 2017 WL 187998, at *1-2 (Mich. Ct. App. Jan. 17, 2017).

In his appeal to the Michigan Court of Appeals, Petitioner raised a single ground for relief:

> I. The Trial Court Erred In Finding That Amy Taliercio Was Unavailable And In Thus Allowing The Admission Of Her P[re]liminary Examination Testimony Under MRE 804(B)(1). The Presentation of []Record Testimony Violated [Petitioner's] Constitutional Right to Confrontation.

(Pet., ECF No. 1, PageID.2.) In an unpublished opinion issued on January 17, 2017, the court of appeals rejected Petitioner's appellate issue and affirmed his convictions. *Taylor*, 2017 WL 187998, at *2-3.

Petitioner sought leave to appeal to the Michigan Supreme Court, raising the same claim he presented to the Michigan Court of Appeals. The supreme court denied leave to appeal on September 12, 2017.

On July 5, 2018, Petitioner filed his habeas corpus petition. Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner placed his petition in the prison mailing system on July 5, 2018. (Pet., ECF No. 1, PageID.16.) In his habeas

application, Petitioner raises the same ground presented to both the Michigan Court of Appeals and the Michigan Supreme Court. (Pet., ECF No. 1, PageID.5.)

II. AEDPA Standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-382; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court

precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III. Admission of Preliminary Examination Testimony

Petitioner argues, as he did in the state appellate courts, that the preliminary examination testimony of Amy Teliercio, a purported victim of a prior domestic assault by

5

Petitioner, was improperly admitted, both under Mich. R. Evid. 804(b)(1) and under the Confrontation Clause of the Sixth Amendment. He argues that Teliercio's testimony was given at a preliminary examination related to a charge on which Petitioner was not convicted, though he does not suggest that he was acquitted of the offense. Petitioner contends that the prosecution was aware of Teliercio and named her as a witness as early as May 11, 2015, yet the prosecutor could not produce Teliercio at Petitioner's trial on August 2, 2015. He claims that the prosecutor's efforts to produce the witness were both tardy and insufficient.

The Michigan Court of Appeals addressed the claim as follows:

> Taylor argues that admission of an alleged previous victim's testimony was improper because the prosecution did not diligently attempt to secure her as a witness. We disagree. The Sixth Amendment of the United States Constitution and Article I, § 20 of the Michigan Constitution guarantee an accused the right "to be confronted with the witnesses against him." *People v Nunley*, 491 Mich 686, 697; 821 NW2d 642 (2012). However, the trial court does not violate the defendant's right to confrontation by admitting the prior testimony of an unavailable witness if the prosecution made good-faith efforts to obtain the witness's presence at trial and the testimony is sufficiently reliable. *Barber v Page*, 390 US 719, 724-725; 88 S Ct 1318; 20 L Ed 2d 255 (1968); *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998). Generally, testimony taken at a preliminary examination is sufficiently reliable. *Id.*; MCL 768.26.
>
> "A prosecutor who endorses a witness under MCL 767.40a(3) is obligated to exercise due diligence to produce that witness at trial." *People v Eccles*, 260 Mich App 379, 388; 677 NW2d 76 (2004). Whether the prosecution made good-faith efforts to secure a witness depends on the circumstances of each case. *Bean*, 457 Mich at 684. The prosecution must inquire of persons who could help them locate the witness, check out specific leads, and attempt to locate witnesses in foreign jurisdictions. *Id.* at 698-690. Tardy or incomplete efforts to locate the witness are not sufficiently reasonable. *People v Dye*, 431 Mich 58, 68; 427 NW2d 501 (1988) (opinion by LEVIN, J.). However, the trial court need only find that the prosecution engaged in reasonable efforts to locate and secure the witness, not that it did everything possible. *People v George*, 130 Mich App 174, 178; 342 NW2d 908 (1983).
>
> In this case, the prosecution engaged in several steps to locate the witness, and she agreed to testify. However, on the day of trial, the witness abruptly decided not to testify and eluded the prosecution's investigator. The prosecution's investigator attempted to find the witness by checking her address, speaking with her parents, and checking another address where she might have gone. Under the

6

circumstances, we conclude that the prosecution's efforts were not tardy or incomplete. On the day of trial, the prosecution was faced with the unexpected absence of a witness who had previously agreed to testify. While Taylor suggests that the prosecution could have utilized a bench warrant to compel the witness to testify, there is no indication that the witness could have been located and served with such a warrant without delaying the trial. We are not definitely and firmly convinced that the trial court made a mistake when it found that the prosecution engaged in reasonably diligent efforts to secure the witness's testimony in this case.

Additionally, there was no indication that the preliminary examination testimony in this case was not sufficiently reliable. See *Bean*, 457 Mich at 684. We conclude that the trial court did not abuse its discretion by admitting it.

*Taylor*, 2017 WL 187998, at* 2-3.

To the extent that Petitioner argues that the admission of the witness' testimony violated Michigan law, his claim is not reviewable in this proceeding. The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68. Instead, the decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (recognizing that "'a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'") (quoting *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

With respect to Petitioner's constitutional claim, the Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him." U.S. Const., Am. VI; *Pointer v. Texas*, 380 U.S. 400, 403-05 (1965) (applying the guarantee to the states through the Fourteenth Amendment). "The central concern of the Confrontation Clause is

7

to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). The Confrontation Clause therefore prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 59 (2004).

The Sixth Circuit has noted that there exists "some question whether a preliminary hearing necessarily offers an adequate prior opportunity for cross-examination for Confrontation Clause purposes." *Al-Timimi v. Jackson*, 379 F. App'x 435, 437-38 (6th Cir. 2010) (citing, *inter alia, Vasquez v. Jones*, 496 F.3d 564, 577 (6th Cir. 2007) (doubting whether "the opportunity to question a witness at a preliminary examination hearing satisfies the pre-*Crawford* understanding of the Confrontation Clause's guarantee of an opportunity for effective cross-examination") (internal quotation marks omitted)). But the Supreme Court has never held that a defendant is denied his rights under the Confrontation Clause when a witness is unavailable at trial and the court admits the witness's preliminary examination testimony. *Id.* at 438. As a result, in the context of a federal court sitting on habeas review, the Sixth Circuit has concluded that a state court's determination that testimony from the preliminary examination was properly admitted was not an unreasonable application of clearly established Supreme Court precedent. *Id.* at 438-40; *see also Williams v. Bauman*, 759 F.3d 630, 636 (6th Cir. 2014) (citing *Al-Timimi* with approval and upholding on habeas review the admission of testimony from the petitioner's own preliminary examination).

Here, the Michigan Court of Appeals carefully considered whether and when the witness became unavailable, the efforts of the prosecution to produce the witness once the

prosecutor became aware that the witness would not appear at trial, and the opportunity Petitioner had for cross-examination at the earlier preliminary examination. Petitioner utterly fails to challenge the findings of the court of appeals on these points. He simply contends that more should have been done to assure that the witness would appear. Such a challenge fails to demonstrate that the court of appeals either unreasonably determined the facts or unreasonably applied clearly established Supreme Court precedent.

In addition, although Petitioner baldly claims that he was never convicted in the case in which Teliercio gave her preliminary examination testimony, he never contends that he was acquitted of that offense. He therefore provides no argument or evidence that either undermines the reliability of Teliercio's sworn testimony or that suggests that further opportunity for cross-examination was required.

Under all of these circumstances, and in the absence of clearly established Supreme Court precedent on the issue, Petitioner fails to demonstrate that the state court's denial of his confrontation claim constituted an unreasonable application of established Supreme Court precedent.

**Conclusion**

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

**Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a

determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

The Court will enter a judgment and order consistent with this opinion.

Dated:   September 13, 2018              /s/ Paul L. Maloney
                                                                              Paul L. Maloney
                                                                              United States District Judge